IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jerome Grace,                                              Case No. 3:08 CV 1291

       Plaintiff,    MEMORANDUM OPINION
              AND ORDER

    -vs-

             JUDGE JACK ZOUHARY

Commissioner of Social Security,

       Defendant.


### INTRODUCTION

Plaintiff Jerome Grace timely filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny Supplemental Social Security Income (SSI) benefits.  Plaintiff requested judicial review pursuant to 42 U.S.C. § 405(g).[1] The Appeals Council notified Plaintiff by letter dated March 28, 2008 that it was denying his request for review of the Administrative Law Judge's (ALJ) August 17, 2006 decision denying Plaintiff SSI benefits.

This case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2).  Following briefs on the merits from both

---

[1] Under 42 U.S.C. § 405(g), "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." (emphasis added).

parties, the Magistrate issued an R&R recommending that the Court affirm the ALJ's decision to deny Plaintiff's claim for SSI benefits (Doc. No. 18).

This matter is now before this Court on Plaintiff's Objection to the R&R (Doc. No. 19). Defendant filed a response (Doc. No. 20), to which Plaintiff replied (Doc. No. 21).  In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a de novo determination of the Magistrate's findings.  For the reasons below, the Court adopts the Magistrate's R&R and denies Plaintiff's claim.

### BACKGROUND

The R&R accurately recites the relevant factual and procedural background from the Record, and this Court adopts them in their entirety (R&R, pp. 2-9).

Briefly, Plaintiff is now 36 years old and has a tenth-grade education.  He has no past relevant work experience (Tr. 105).  He has performed work as a dishwasher and janitor in the past, but not at the substantial gainful activity level (Tr. 368).  Plaintiff claims he is disabled and unable to work because he suffers from depression.  Plaintiff claims his depression stems from being shot on three different occasions.  Plaintiff was shot twice when he was a teenager; the first time by his younger brother in the stomach.  Less than thirty days later, a friend of Plaintiff shot him in the upper thigh. In August 2001, three unknown individuals shot Plaintiff in the groin.  Plaintiff does not suffer physical injuries which preclude him from working, rather Plaintiff claims an emotional disturbance from the shootings as well as from the murder of his father when he was a child (also as the result of a shooting), which leaves him depressed, unable to interact in society and maintain employment. While his first appeal to the Appeals Council was pending, Plaintiff was incarcerated by the State of Ohio from November 2004 through November 2005 on drug charges (Tr. 327, 422).

2

Plaintiff applied for SSI benefits in September 2001, alleging he became disabled on August 18, 2001. His application was denied initially and later on reconsideration. Plaintiff requested a hearing before an ALJ. ALJ Bryan Bernstein conducted a hearing in September 2003 and issued an unfavorable decision in November 2004. On review, the Appeals Council remanded Plaintiff's case for a new hearing. A second ALJ, Steven Neary, conducted the second hearing in May 2006 and issued an unfavorable decision on August 17, 2006, concluding Plaintiff does not suffer from a severe impairment. The Appeals Council denied Plaintiff's request for review of ALJ Neary's determination on March 28, 2008. This Complaint followed.

## STANDARD OF REVIEW

In reviewing the denial of SSI benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Comm'r of Soc. Sec.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

3

## DISABILITY STANDARD

Disability under Social Security is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  *Walters*, 127 F.3d at 529.  In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (citing 42 U.S.C. § 423(d)(2)).

A five-step sequential analysis determines whether a person is disabled and entitled to SSI benefits.  20 C.F.R. § 416.920.  This analysis may be summarized as follows:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  Determine the claimant's residual functional capacity and whether claimant can perform past relevant work.

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Only if a claimant satisfies each element of the analysis, including the inability to do other work, and meets the duration requirement, is he determined to be disabled.  20 C.F.R. § 416.920(4)(i)-(v); *see also Walters*, 127 F.3d at 529.

4

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five, in determining whether the claimant has the residual functional capacity to perform available work in the national economy.  *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

ALJ Neary denied Plaintiff at step two of the five-step analysis, concluding that although Plaintiff suffers from the impairments of depression and "history of gunshot wound,"

> the claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921).

(Tr. 19).

The R&R affirmed ALJ Neary's decision.  Plaintiff objects to the R&R.  Specifically, Plaintiff argues the Magistrate erred: (1) in finding Plaintiff's mental impairment was "non-severe"; alleged failure to follow prescribed treatment; (2) in evaluating the treating psychiatrist's opinion; and (3) in finding the ALJ complied with the Appeals Council's instructions on remand regarding the administrative record.  Each objection is addressed below.

## DISCUSSION

### Severity of Impairment

Plaintiff's first objection is to the Magistrate's conclusion that "there is nothing in the record to support a finding that Plaintiff's mental impairment was of the severity to limit his physical or mental ability to do basic work activities" (Doc. No. 18, p. 11).  Plaintiff argues that reports and evaluations of Dr. Nagaveni Ragothaman, Plaintiff's treating physician, provide ample evidence to support a conclusion that Plaintiff's mental impairment was severe.

5

Specifically, Plaintiff takes issue with the R&R's reference to the fact that Plaintiff was not treated by Dr. Ragothaman for approximately one year and that he had gone four months without medication at the time Dr. Ragothaman issued her report (*see* Doc. No. 19, pp. 12-13).  Plaintiff argues it was error for the Magistrate to "condemn [Plaintiff] for his inconsistent participation in treatment" (Doc. No. 19, p. 13).  This Court does not believe the R&R hinged on the Magistrate's evaluation of Plaintiff's participation.  Simply put, Plaintiff's participation or non-participation in treatment is not the crux of the step two determination.

Instead, the relevant inquiry is whether the R&R incorrectly affirmed ALJ Neary's decision at step two:  namely, whether Plaintiff has a medically determinable impairment, or a combination of  impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 416.920(a)(4)(ii) & (c).  It is Plaintiff's burden to prove the severity of his impairments.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

The regulations define "non-severe impairment:"  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).  Section (b) defines "basic work activities" as:

[T]he abilities and aptitudes necessary to do most jobs.  Examples of these include --

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)    Capacities for seeing, hearing, and speaking;
(3)    Understanding, carrying out, and remembering simple instructions;
(4)    Use of judgment;
(5)    Responding appropriately to supervision, co-workers and usual work situations; and
(6)    Dealing with changes in a routine work setting.

"Step two has been described as a '*de minimis* hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless

6

of age, education, and experience.'" *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 WL 2628355 at \*8 (6th Cir. Aug. 27, 2009) (quoting *Higgs*, 880 F.2d at 862).  The goal at step two is to "screen out totally groundless claims."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Plaintiff takes refuge in the phrases "*de minimis* hurdle" and "totally groundless."  While the hurdle at step two is low, it is a hurdle nonetheless and claimants are not entitled to an automatic checking of the box.  Here, the only evidence in the Record supporting a finding of severe impairment is Dr. Ragothaman's evaluations and her January 2004 report (Tr. 320-26).  All other mental health professionals evaluating Plaintiff found his depression to be non-severe.

A November 2001 evaluation performed by Dr. Alan White, a consultative psychologist, found Plaintiff to have a depressive disorder, a Global Assessment of Functioning (GAF) score of 61, and that:

> Mr. Grace's ability to remember, sustain, concentrate and attend is not impaired.  His ability to follow simple directions is not impaired.  His ability to get along with others is not impaired.  His ability to withstand the stress and pressures associated with day-to-day work activity is mildly impaired due to depression.

(Tr. 265).

A December 2001 evaluation by state psychologist Dr. Joan Branson found Plaintiff to be suffering from a depressive disorder, but the degree of resulting limitation with respect to daily living activities and maintaining concentration, persistence, or pace was mild (Tr. 283).  Dr. Branson concluded that Plaintiff "is currently experiencing some limitation in his daily activities, but this limitation is not severe enough to interfere with his functioning to the degree that it would prevent him from working" (Tr. 285).

In July 2002, Plaintiff began treatment with Dr. Ragothaman at Zepf Community Mental Health Center. At that time, Dr. Ragothaman diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe with Psychotic Features, as well as Post-Traumatic Stress Disorder (Tr. 291). Plaintiff was also diagnosed as suffering from alcohol, cannabis, and cocaine abuse, all of which were in remission (Tr. 291). Dr. Ragothaman assigned a GAF score of 50.

A November 2003 evaluation by consultative psychologist Dr. Bruce Kelly diagnosed Plaintiff with a mood disorder, occupational and economic problems, and some mild symptoms or some difficulty in social occupational, or school functioning, but generally functioning well (Tr. 306-12). Dr. Kelly assigned Plaintiff a GAF score of 65. Additional testing administered by Dr. Kelly showed that Plaintiff has average intellectual functioning capacities.

In January 2004, Dr. Ragothaman prepared a report opining that Plaintiff met the requirements of Social Security Listing 12.04 for affective disorders (Tr. 320-26). In August 2004, Dr. Ragothaman provided an updated evaluation confirming her prior diagnoses of Major Depressive Disorder, Severe, With Psychotic Features and Post-Traumatic Stress Disorder (Tr. 333-34). She also assigned a GAF score of 45.

This Court agrees with the R&R's conclusion that ALJ Neary's finding at step two is supported by substantial evidence indicating Plaintiff's depression does not constitute a severe impairment under the applicable regulations. The portion of the regulations outlining the required level of severity for a severe impairment for depression is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

**12.04 Affective Disorders:** Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .

A.      Medically documented persistence, either continuous or intermittent, of one of the following:

      1.      Depressive syndrome characterized by at least four of the following:

            a.      Anhedonia or pervasive loss of interest in almost all activities; or
            b.      Appetite disturbance with change in weight; or
            c.      Sleep disturbance; or
            d.      Psychomotor agitation or retardation; or
            e.      Decreased energy; or
            f.      Feelings of guilt or worthlessness; or
            g.      Difficulty concentrating or thinking; or
            h.      Thoughts of suicide; or
            i.      Hallucinations, delusions or paranoid thinking; . . .

*  *  *

And

B.      Resulting in at least two of the following:

      1.      Marked restriction of activities of daily living; or
      2.      Marked difficulties in maintaining social functioning; or
      3.      Marked difficulties in maintaining concentration, persistence, or pace; or
      4.      Repeated episodes of decompensation, each of extended duration;

*  *  *

ALJ Neary did not give controlling weight to the opinion of Dr. Ragothaman.  The remaining medical opinions in the Record all indicate Plaintiff's depression mildly impairs his social interaction but does not result in "marked difficulties" in daily living, social functioning, or maintaining concentration under the "B Criteria" of § 12.04.

9

### Weight Afforded Opinion of Treating Psychiatrist

Plaintiff's second objection is that the R&R misconstrued his argument with respect to the weight ALJ Neary afforded Dr. Ragothaman's opinion.  In his Objection, Plaintiff maintains he does not argue that a finding of severity at step two would follow if Dr. Ragothaman's opinions had been given controlling weight, as the Magistrate stated in her R&R.   Rather, Plaintiff maintains his argument is that "even if Dr. Ragothaman's opinions were not given *controlling* weight, but instead given *any significant* weight, the ALJ would have been required to make a finding of severity at Step 2" (Doc. No. 19, p. 15) (emphasis added).  The question before this Court is whether ALJ Neary was required to give Dr. Ragothaman's assessment any significant weight.

Generally, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007).  Indeed, the regulations state that an ALJ is to give controlling weight to a treating source opinion if the opinion "is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 416.927(d)(2); SSR 96-2p.  An ALJ must "give good reasons" for any decision not to assign such weight and in determining what weight should be afforded.  *Id.* "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors -- namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

10

In his decision, ALJ Neary did not give significant weight to Dr. Ragothaman's opinion that Plaintiff "has 'marked' limitations in activities of daily living, social functioning and concentration, persistence and pace" (Tr. 23).  ALJ Neary found that Dr. Ragothaman's opinion was "not well supported by her own treatment records, and is inconsistent with the rest of the record" (Tr. 23). Moreover, "Dr. Ragothaman's opinion and her treatment records typically repeat the complaints of the claimant and use diagnostic terms without analysis" (Tr. 23).  ALJ Neary noted further that Dr. Ragothaman's "specific observations made during treatment sessions, such as good eye contact, good grooming, memory for details, stable affect, spontaneous speech and cooperativeness . . . indicate no significant signs of pathology or any reason to believe [Plaintiff's] account of marked psychological difficulties" (Tr. 23).  ALJ Neary also cited the infrequent treatment from Dr. Ragothaman as another reason not to afford Dr. Ragothaman's opinion any significant weight (Tr. 23).

In light of his assessment of Dr. Ragothaman's opinion, ALJ Neary gave greatest weight to state agency psychologists' opinion that Plaintiff's depression did not constitute a severe impairment, finding their opinion to be "more consistent with the medical records" (Tr. 23).

This Court agrees with the R&R's assessment that "the medical opinions presented by Dr. Ragothaman are not supported by any clinical or laboratory diagnostic evidence" (Doc. No. 18, p. 13). There is no evidence that Dr. Ragothaman's conclusions were based on clinical testing.  Furthermore, Dr. Ragothaman's own treatment notes do not support the extreme "marked" limitations referenced in her January 2004 report (Tr. 320-26).  As the Commissioner correctly points out: "A significant example of Dr. Ragothaman's flawed assessment is embodied in her [January] 2004 opinion that Plaintiff was essentially home bound because of his mental condition.  Months later, Plaintiff showed the weakness of Dr. Ragothman's assessment when he and several friends were arrested in a car

11

transporting drugs" (Doc. No. 20, pp. 4-5).  Finally, ALJ Neary articulated his "good reasons" for refusing to give significant weight to Dr. Ragothaman's opinion, in compliance with 20 C.F.R. § 404.1527(d)(2).

Plaintiff cites *Blakenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) for the proposition that psychiatric evaluations are not conducive to clinical testing, and that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques."  However, there are "other reasons" to question Dr. Ragothaman's techniques -- namely the inconsistency between her opinion and every other physician, as well as the inconsistency between her opinion and her own treatment notes.

Plaintiff also argues that the fact that Dr. Ragothaman prescribed several drugs to treat Plaintiff's depression is evidence of the validity of Dr. Ragothaman's opinion.  However, prescriptions do not establish that Plaintiff suffers from a severe impairment.  Indeed, all professionals evaluating Plaintiff acknowledge that he suffers from a form of depression.  Certainly prescriptive measures are an appropriate form of treatment.  But the issue here is the severity of Plaintiff's impairment, and the fact Dr. Ragothaman prescribed drugs is not indicative of the severity of the impairment for SSI purposes.

In sum, this Court concludes ALJ Neary properly assigned weight among the several medical sources in the record, discounting Dr. Ragothaman's opinion which contradicted all other opinions.

**Completion of the Administrative Record**

In his third objection, Plaintiff argues the Commissioner failed to comply with the Order of the Appeals Council Remanding Case to an Administrative Law Judge. In that Order the Appeals Council ordered that on remand the ALJ take the following actions, among others (Tr. 129-30):

- Obtain additional evidence concerning the claimant's mental impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional evidence may include, if warranted and available, a consultative examination and medical source statements about what the claimant can still do despite the impairment.

- Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 416.927(f) and Social Security Ruling 96-6p).

It is clear from the text of the Order that ALJ Neary was not *required* to call a medical expert or obtain additional consultative examinations on remand, but rather should do so "*if necessary*" (emphasis added). In *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001), a social security claimant argued the ALJ erred when he rejected her requests for additional testing or expert testimony. The court held that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary" (citing 20 C.F.R. §§ 404.1517 & 416.917). The order also stated "[t]he additional evidence may include, *if warranted* and available, a consultative examination and medical source statements . . ." (Tr. 129-30) (emphasis added). The order clearly gave the ALJ discretion to obtain another consultative examination if it would be of assistance.

Here, ALJ Neary determined that there was already sufficient medical testimony on the severity of the impairment in order to evaluate Plaintiff's mental condition and residual functional capacity. The record contained evidence from several mental health professionals as to Plaintiff's

13

mental condition.  ALJ Neary did not abuse his discretion in denying Plaintiff's request for additional expert testimony, nor was ALJ Neary required to order additional consultative examinations.

Plaintiff also appears to take issue with the fact that "the record contains no medical information covering [Plaintiff's] condition during the period from December 2004 through the date of the remand hearing, May 24, 2006 " and that "[n]one of the medical records in this case were less than 18 months old at the time of the hearing" (Doc. No. 19, p. 20).  However, Plaintiff cannot point to any specific medical records generated during that time frame that are missing.  Nor is there any suggestion that Plaintiff's condition worsened during this period.  Therefore, ALJ Neary acted within his discretion in not calling a medical expert or delaying the hearing so that Plaintiff could generate more recent medical records.

## CONCLUSION

In light of the foregoing analysis, this Court adopts the Magistrate's R&R and affirms the ALJ's August 17, 2006 decision denying Plaintiff's application for SSI benefits.

Furthermore, Plaintiff has failed to show the existence of any set of facts upon which he could prevail.  Accordingly, under 28 U.S.C. §1915(a), the Court certifies that an appeal of this action could not be taken in good faith.

IT IS SO ORDERED.

                                   ___s/ Jack Zouhary____
                                   JACK ZOUHARY
                                   U. S. DISTRICT JUDGE

                                   September 24, 2009

14